NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RESORT ASSOCIATES, LLC d/b/a MASSAGE HEIGHTS, RONALD O'MALLEY, and JAMES GUMINA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 25- 2011 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendant United States Liability Insurance Company's ("USLI") Motion for Summary Judgment. ("Motion," ECF No. 16.) Plaintiffs Resort Associates, LLC, d/b/a Massage Heights, Ronald O'Malley, and James Gumina (collectively, "Plaintiffs" or "Massage Heights") opposed the Motion, ("Opp.," ECF No. 19), and Defendant replied, ("Reply," ECF No. 18). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND[1]

In 2023, Massage Heights was sued in New Jersey state court after an employee allegedly sexually assaulted a patron during her massage. USLI, which provided a commercial and

[1] In support of its Motion, Defendant submitted a Statement of Undisputed Material Fact, ("SUMF," ECF No. 17), to which Plaintiffs responded, (ECF No. 19-2). Per these submissions, all material facts are

professional liability insurance policy to Massage Heights, initially defended the business against the tort lawsuit, then disclaimed further coverage when the relevant defense expense policy limit ($100,000) had been reached. Massage Heights in turn commenced the instant action, suing the insurer for defense and indemnification in the underlying tort lawsuit. The question before the Court is whether USLI owes a duty to defend or indemnify Plaintiffs beyond that initial $100,000. The answer to that question is that the insurer does not.

Massage Heights is a day spa in Sea Girt, New Jersey. ("Compl.," ECF No. 1-1 ¶ 2.) In 2023, a Massage Heights massage therapist allegedly sexually assaulted a patron, and the patron ("C.S.") sued Massage Heights in New Jersey state court. *See C.S. v. Massage Heights*, No. MON-L-1966-23 (N.J. Super. Ct. Law Div. June 26, 2023) (the "Underlying Action"). In the Underlying Action, C.S. alleges that "while [she] was receiving a massage in a private treatment room, a male therapist hired and assigned by [Massage Heights] to perform safe and secure massage therapy . . . [took] advantage of [her] by sexually assaulting, sexually contacting and violating" her.[2] ("Underlying Compl.," ECF No. 16-15 at 2; *see* SUMF ¶ 25.) C.S. sued Massage Heights (and two of its "owner[s]/member[s]") for various torts, including for breaching their duties to "provide a safe and secure environment to its patrons/guests/clients," failing to "properly train the

---

undisputed. (*See id.* (providing that each of Defendant's factual assertions is "undisputed" and, in response to one factual assertion, purporting to disagree only with Defendant's legal argument based on that assertion).)

[2] Per a certification by C.S.'s counsel, filed in the Underlying Action and attached to USLI's reply brief, C.S. was "violently sexual[ly] assaulted/penetrated while receiving a massage . . . from an unlicensed Massage Therapist employed by [Massage Heights]." ("Certification," ECF No. 18-2 ¶ 3.) In separate criminal proceedings in 2024, the employee pled guilty to criminal sexual contact with C.S. (Certification, Ex. A, Judgment of Conviction & Order for Commitment at 1; Certification, Ex. B, Transcript of Plea at 8–9, 13–14.)

staff members/massage therapists/employees," and "negligent, careless and reckless hiring practices."[3] (Underlying Compl. at 2, 5–8; *see* SUMF ¶ 26.)

At all relevant times, Massage Heights had an insurance policy (the "Policy") with USLI.[4] ("Policy," ECF No. 1-3[5]; *see* SUMF ¶ 5.) Massage Heights filed a claim under the Policy, seeking indemnification and for USLI to provide legal counsel and cover defense costs in the Underlying Action. (*See* SUMF ¶¶ 5, 27, 31, 35, 39; ECF No. 16-3 ¶ 2.) USLI issued coverage position letters in response, advising that, per the Policy, it would defend Massage Heights up to $100,000 in the Underlying Action, but it had no duty to defend beyond that amount and no duty to indemnify. (SUMF ¶¶ 28–30, 36–38; *see* ECF Nos. 16-6, 16-7.) Based on the relevant Policy language excerpted in the letters, USLI explained that the "Commercial General Liability" part of the Policy provided no coverage in the Underlying Action (due to a specific exclusionary provision, explained below), and the "Professional Liability" part created a duty to defend subject to a limit of $100,000 per claim. (ECF Nos. 16-6, 16-7.)

In short order, USLI retained legal counsel for Massage Heights, which defended the business against the Underlying Action. (SUMF ¶¶ 31, 33, 39, 41–42; *see* ECF Nos. 16-13, 16-16.) About thirteen months later, on September 23, 2024, USLI advised Plaintiffs that "the

---

[3] A second state suit, not at issue here, was brought in 2024 based on the same employee's alleged sexual assault of another Massage Heights patron. *See Jane Doe v. Massage Heights*, MON-L-4330-24 (N.J. Super. Ct. Law Div. Dec. 24, 2024). After USLI filed the instant Motion (and after the Motion was fully briefed), Plaintiffs moved to amend their Complaint to name both patrons—C.S. and Jane Doe—as defendants. (ECF No. 23.) The Honorable J. Brendan Day, U.S.M.J. denied such amendment. (ECF No. 33.)

[4] All three Plaintiffs in the instant action (Massage Heights and two of the LLC's members) are insureds under the Policy. (SUMF ¶¶ 5–6.) All three are likewise named defendants in the Underlying Action, and all three had the benefit of USLI's defense up to $100,000. (*Id.* ¶¶ 24, 31, 34–35, 41.) For readability and clarity purposes, the Court often refers to Plaintiffs collectively as "Massage Heights" throughout this Background Section.

[5] Because the Policy is not consecutively paginated, the Court cites the page numbers in the CM/ECF header.

$100,000 defense expense policy limit has been exhausted and USLI will be closing its file for the [Underlying Action]."[6] (SUMF ¶ 43 (alteration in original) (quoting ECF No. 16-8).)

This declaratory judgment action followed. On January 29, 2025, Plaintiffs sued USLI in New Jersey state court, seeking a declaration that the insurance company must defend and indemnify them in the Underlying Action. (*See generally* Compl.) USLI removed the case to this Court on March 21, 2025, (ECF No. 1), and the parties agreed to proceed directly to summary judgment, (ECF No. 33 at 3; *see* ECF No. 12).[7] USLI filed the instant Motion, arguing that, apart from the limited defense already provided to Plaintiffs, USLI has no obligation to defend or indemnify Plaintiffs in the ongoing state court action. (*See* Motion.) Plaintiffs disagree—on a narrow, semantical basis explained below. (*See* Opp.) The Motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a reasonable jury to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of

---

[6] As of the parties' March 2026 filings, the Underlying Action remained pending. (*See* ECF No. 29 at 3.)

[7] Plaintiffs brought a similar declaratory judgment action against another insurance carrier, which was also removed to this District. *See Massage Heights v. Phila. Ins. Cos.*, No. 25-1916 (D.N.J. Mar. 17, 2025). Judge Day held a joint initial conference in both cases, during which "the parties agreed that, given the nature of the cases, they would forego discovery and proceed directly to summary judgment." (ECF No. 33 at 3.) Although the insurance company in the other case, like USLI here, moved for summary judgment, the parties stipulated to dismiss the action shortly after, before summary judgment was decided. *See Phila. Ins. Cos.*, No. 25-1916, ECF Nos. 18, 32, 33.

demonstrating the absence of a genuine dispute of material fact, after which the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. If any party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then "there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

"Disposition of an insurance action on summary judgment is appropriate, when, as here, there are no material underlying facts in dispute. The only contested issue involves the interpretation of the scope of coverage of an insurance contract, a question of law" for the Court. *McMillan v. State Mut. Life Assurance Co. of Am.*, 922 F.2d 1073, 1074 (3d Cir. 1990) (cleaned up) (citing *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 792 (3rd Cir. 1987)). The parties agree that New Jersey law, set forth below, governs this insurance coverage dispute. (*See* Motion; Opp.)

### B. DUTY TO DEFEND

"An insurer is contractually obliged to provide the insured with a defense against all actions covered by the insurance policy." *Abouzaid v. Mansard Gardens Assocs., LLC*, 23 A.3d 338, 346 (N.J. 2011). This "duty to defend" is "triggered by the filing of a complaint alleging a covered claim." *Id.* Accordingly, to determine whether an insurer has a duty to defend against a particular action, the complaint in that underlying action "'should be laid alongside the policy and a determination made as to whether, *if the allegations are sustained*, the insurer will be required to pay the resulting judgment,' with any doubts 'resolved in favor of the insured.'" *Norman Int'l v. Admiral Ins. Co.*, 279 A.3d 425, 432 (N.J. 2022) (emphasis added) (quoting *Abouzaid*, 23 A.3d at

346); *see Holy Ghost Church v. Church Mut. Ins. Co.*, No. 11-1800, 2011 WL 5555659, at *4 (E.D. Pa. Nov. 14, 2011) (explaining that under Pennsylvania law, as under New Jersey law, "the court must decide only whether the facts alleged in the complaint, if true, would potentially bring the claims within the policy's coverage"), *aff'd*, 492 F. App'x 247, 250 (3d Cir. 2012) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."). If the underlying complaint "comprehends an injury which may be within the policy," the insurer has a duty to defend against that complaint. *Danek v. Hommer*, 100 A.2d 198, 203 (N.J. Super. Ct. App. Div. 1953) (citation omitted), *aff'd mem.*, 105 A.2d 677 (N.J. 1954) (per curiam). Conversely, when a claim, "even if successful, would not be within the policy coverage," there is no duty to defend. *Id.* at 202–03.[8]

### C. INSURANCE POLICY INTERPRETATION

Under New Jersey law, interpretation of an insurance policy's scope of coverage presents "a question of law properly decided by the Court." *Aaron Ambulance Med. Transp., Inc. v. Certain Underwriters at Lloyd's London*, No. 16-4564, 2017 WL 4074283, at *4 (D.N.J. Sept. 14, 2017) (citing *County of Gloucester v. Princeton Ins. Co.*, 317 F. App'x 156, 159 (3d Cir. 2008); *Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts & Youngs, P.C.*, 821 F.2d 216, 219 (3d Cir. 1987)); *see Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med.*, 46 A.3d 1272, 1276 (N.J. 2012). The Court interprets language in an insurance policy "according to its plain and ordinary meaning." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992). "Where the

[8] Plaintiffs seek a declaratory judgment that USLI has a duty to both defend and indemnify them in the Underlying Action. (*See* Compl.) Because the Court herein concludes that USLI has no duty to defend, the analysis ends there. "[I]f an insurer has no duty to defend, it also has no duty to indemnify." *Crum & Forster Specialty Ins. Co. v. Detect Tank Servs., LLC*, No. 23-1754, 2024 WL 3859808, at *2 n.9 (3d Cir. Aug. 19, 2024); *see Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 483 A.2d 402, 405 (N.J. 1984) ("[N]either duty exists except with respect to occurrences for which the policy provides coverage.").

terms of the policy are ambiguous and there is doubt regarding the existence of coverage, the ambiguity is ordinarily resolved in favor of the insured." *Del. Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, 519 F. Supp. 3d 178, 182 (D.N.J. 2021) (citing *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004)). If instead the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is written." *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994); *see also Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) ("An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled."). The Court "should not write for the insured a better policy of insurance than the one purchased." *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004).

"The insured bears the initial burden to show that the claim is 'within the basic terms of the policy.' Once this showing is made, 'where an insurer claims the matter in dispute falls within exclusionary provisions of the policy, it bears the burden of establishing that claim.'" *151 E. Leaming Ave. Condo Ass'n v. QBE Specialty Ins. Co.*, No. 14-175, 2015 WL 3795648, at *2 (D.N.J. June 18, 2015) (cleaned up) (quoting *S.T. Hudson Eng'rs, Inc. v. Pa. Nat'l Mut. Cas. Co.*, 909 A.2d 1156, 1163 (N.J. Super. Ct. App. Div. 2006)). "Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.' If the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability.'" *Flomerfelt*, 997 A.2d at 996 (citations omitted); *see also A.K. v. Fid. & Guar. Ins. Underwriters, Inc.*, No. 21-20717, 2023 WL 6231147, at *4 (D.N.J. Aug. 14, 2023) ("While exclusions in an insurance policy should be narrowly construed, the Court will enforce the exclusion as written if it is 'specific, plain, clear, prominent, and not contrary to public policy.'" (quoting *Nav-Its, Inc. v. Selective Ins. Co. of Am.*,

869 A.2d 929, 934 (N.J. 2005))). Relevant here, "[p]olicy provisions that exclude coverage for liability resulting from intentional wrongful acts are common, are accepted as valid limitations, and are consistent with public policy." *P.D. v. Germantown Ins. Co.*, No. A-3829-12T2, 2014 WL 10102329, at *10 (N.J. Super. Ct. App. Div. July 20, 2015) (alteration in original); *see id.* at *8–10 (explaining that theory of liability alleged, such as negligence, has no bearing on intentional nature of underlying conduct, such as "intentional acts constituting a sexual assault").

## III. DISCUSSION

Plaintiffs' Policy with USLI contained two parts: professional liability coverage and commercial liability coverage. (SUMF ¶ 7; *see generally* Policy.) USLI defended Plaintiffs in the Underlying Action pursuant to the *professional* liability part, specifically the "Defense for Allegations of Patient Molestation Coverage Endorsement" therein, and disclaimed any coverage obligation under the *commercial* liability part based on that part's "Molestation or Abuse Exclusion." (SUMF ¶¶ 28–30, 36–38; *see* ECF Nos. 16-6, 16-7.) Plaintiffs focus entirely on the commercial liability coverage exclusion in support of their declaratory judgment claim for coverage, so the Court begins its analysis there.

### A. COMMERCIAL LIABILITY COVERAGE

The commercial liability part of Plaintiffs' Policy contains an express exclusion for claims against an insured arising from "abuse or molestation." (Policy at 57.) The "Molestation or Abuse Exclusion" ("Exclusion") first provides that there is no coverage for "[a]ny injury sustained by any person arising out of or resulting from alleged, threatened or actual abuse or molestation by . . . [a]ny 'employee' of any insured." (*Id.*) This statement describes, as relevant here, excluded injuries (those "sustained by any person arising out of or resulting from alleged, threatened or actual abuse or molestation"), as well as describes the person who allegedly inflicted them ("[a]ny

'employee' of any insured" and other persons not at issue[9]). The Exclusion likewise "applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, threatened or actual including but not limited to molestation or abuse arising out of [the insured's] negligence or other wrongdoing with respect to," *inter alia*, "[h]iring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible" or "the failure to protect any person while that person was in the Insured's care, custody or control." (*Id.*) In short, the Exclusion provides, in relevant part, that USLI "shall not have any duty to defend any 'suit' against any insured seeking damages on account of":

| | |
|---|---|
| "[a]ny injury sustained by any person arising out of or resulting from alleged, threatened or actual abuse or molestation" (by any person) | "all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, threatened or actual" (including due to negligence related to "[h]iring," "training," "supervision," "failure to protect," and so on) |

(*Id.*)

The Exclusion, simply put, is broad. Read "as broadly as its text dictates," it "excludes *any* coverage for *any* injuries arising out of *any* [abuse or molestation]." *Day v. Mount Vernon Fire Ins. Co.*, No. 12-669, 2013 WL 314827, at *6 (E.D. Va. Jan. 23, 2013) (discussing substantially similar policy exclusion, applicable to "assault or battery" instead of "abuse or molestation").

"A plain reading of the allegations in the [Underlying] Complaint unequivocally brings them within the ambit of the . . . Exclusion." *Montville Twp. Bd. of Educ. v. Zurich Am. Ins. Co.*

[9] The Exclusion encompasses "alleged, threatened or actual abuse or molestation by": "a) Any insured," "b) Any 'employee' of any insured," "c) Any 'volunteer worker' or 'temporary worker,'" or "d) Any other person." (Policy at 57.) The identity of the massage therapist who allegedly sexually assaulted C.S. is not at issue in this action; Plaintiffs agree that C.S. "alleges she was sexually assaulted . . . [or] sexually contacted by [Plaintiffs'] employee," and they premise their argument for coverage on a different term in the Exclusion. (Opp. at 4–5.) In any event, because claims arising from abuse or molestation by "[a]ny other person" are equally excluded, the identity of the alleged assailant is of no moment. (Policy at 57.)

(*Montville II*), 783 F. App'x 235, 240, 241 (3d Cir. 2019). C.S. alleges that a massage therapist working for Massage Heights "[took] advantage of [her] by sexually assaulting, sexually contacting and violating" her "while [she] was receiving a massage in a private treatment room." (Underlying Compl. at 2.) She claims the incident "caused [her] to suffer permanent physical and psychological injuries," including, for example, "torment," "anxiety," "depression," "flashbacks," "severe shame," and "a substantial impairment in her self-esteem and ability to trust others." (*Id.* at 4; *see id.* at 6–7, 9.) From each insured, C.S. seeks "compensatory damages, together with interest, costs of suit, [and] attorneys' fees." (*Id.* at 5, 7, 9.) C.S. thus "seeks damages" for "injury" "arising out of or resulting from alleged, threatened or actual abuse or molestation" by a Massage Heights employee. (Policy at 57.) Likewise, her various tort claims—that Plaintiffs "[e]ngaged in negligent, careless and reckless hiring practices," "[f]ailed to properly train the staff members/massage therapists/employees," and breached their "duty to provide a safe and secure environment to . . . patrons/guests/clients"—are claims of "molestation or abuse arising out of [the insured's] negligence or other wrongdoing with respect to . . . [h]iring, placement, employment, training, supervision or retention . . . or the failure to protect."[10] (Underlying Compl. at 2, 5–8; Policy at 57.)

[10] The commercial liability part's Absolute Professional Liability Exclusion parallels the professional negligence and wrongdoing language in the Molestation or Abuse Exclusion, without the specific reference to claims of molestation or abuse. (Policy at 54 (excluding coverage for "all loss sustained by any person, including emotional distress, whether alleged, threatened or actual including but not limited to negligence or other wrongdoing with respect to . . . [h]iring, placement, employment, training, supervision or retention of a person for whom any Insured is or ever was legally responsible; or . . . [t]he failure to protect any person while that person was in the Insured's care, custody or control").) This provision thus appears to further preclude commercial liability coverage in the Underlying Action, which is consistent with USLI's position that only the professional liability part of the Policy entitled Plaintiffs to any coverage. However, because USLI did not invoke this provision in its coverage position letters and raises it only in reply, the Court will not consider it further. (ECF Nos. 16-6, 16-7; Reply at 3–4.)

The Exclusion thus unambiguously applies to the Underlying Complaint's allegations. "The allegations here are that, but for [the insured's] failures," C.S. "would not have suffered sexual abuse." *Montville Twp. Bd. of Educ. v. Zurich Am. Ins. Co.* (*Montville I*), No. 16-4466, 2017 WL 2380175, at *8 (D.N.J. June 1, 2017). So too, "but for the sexual molestation and . . . abuse," she "would not have sustained any injury or damages and would not have a cause of action" in the Underlying Complaint. *A.K.*, 2023 WL 6231147, at *5. Such injuries plainly "aris[e] out of" and "result[] from alleged, threatened or actual abuse or molestation" under the Exclusion. (Policy at 57); *see Nationwide Mut. Fire Ins. Co. v. Mr. K.*, No. 05-569, 2005 WL 3434081, at *2 (W.D. Pa. Dec. 13, 2005) ("Here, all the injuries suffered by [the plaintiffs in the underlying action] resulted, either directly or indirectly, from the sexual harassment. Indeed, the sexual harassment is the motivating factor for the claims. But for [the underlying] alleged harassment . . . , [the underlying plaintiffs] would not be pursuing any claims against the [the insureds]."); *Montville I*, 2017 WL 2380175, at *10 ("'Abusive acts' are the sole cause of the injury here, and the entire case arises from them."); *see also A.K.*, 2023 WL 6231147, at *5 ("As other courts have found, a plain and ordinary reading of the sexual molestation exclusion and the Underlying Action Complaint compels the conclusion that the sexual molestation exclusion applies to the conduct at issue." (citing *P.D.*, 2014 WL 10102329, at *8–10)); *accord Am. Fam. Mut. Ins. Co. v. S.C.*, 602 F. Supp. 3d 1098, 1107–09 (S.D. Ind. 2022). Because C.S.'s claims plainly fall within the Exclusion, the commercial liability part of Plaintiffs' Policy affords no coverage in the Underlying Action.

Plaintiffs do not dispute that the Underlying Complaint alleges conduct covered by the Exclusion. Their only argument in attempting to avoid the straightforward application of the Exclusion is far narrower. According to Plaintiffs, by virtue of the Exclusion's use of the word "sustained" to modify the word "injury," the Exclusion applies only after it has been adjudicated

that an injury was *actually* sustained, or that such injury was *actually* due to abuse or molestation. (Opp. at 4 ("Sustained is the past tense of the verb sustain which can mean to suffer or endure. In the Action it has yet to be established what if any injury CS sustained or, if she has sustained and [sic] injury, whether it was related to molestation."); *id.* at 6 ("[T]he injury 'sustained' as a result, if any, has yet to be established, nor has the allegation of sexual assault been proven.").) Plaintiffs go so far as to argue that "sexual assault and sexual contact have specific statutory elements which remain to be proven by a preponderance of the evidence before the nature of the injury allegedly sustained by CS and a link, if any, to either sexual assault or contact may be made." (*Id.* at 5 (discussing N.J. Stat. Ann. §§ 2C:14-1(d), 2C:14-2(c)).) Plaintiffs contend that the Exclusion is therefore ambiguous, and such ambiguity should be construed in their favor so as to require coverage in the Underlying Action. (*Id.* at 5–6.)[11]

The Court cannot agree. "When the terms of an insurance contract are clear, as in this case, it is the function of a court to enforce it as written and not to make a better contract for either of the parties." *State v. Signo Trading Int'l, Inc.*, 612 A.2d 932, 938 (N.J. 1992) (cleaned up) (quoting *Kampf v. Franklin Life Ins. Co.*, 161 A.2d 717, 720 (N.J. 1960)). As the New Jersey Supreme

[11] At the outset, the Court notes that Plaintiffs point to no cases that support their reading of the Exclusion, notwithstanding that its language is commonly found in insurance policies. Nor do Plaintiffs identify any cases that read the word "sustained" as narrowly as they advocate—let alone that give as much (or any) attention to the word as Plaintiffs do. It appears frequently in policies (including in identical provisions), yet equally as frequently goes unremarked upon. *See, e.g.*, *U.S. Underwriters Ins. Co. v. The Hands of Our Future, LLC*, No. N14C-10-175, 2016 WL 4502003, at *2–5 (Del. Super. Ct. Aug. 19, 2016); *CNA Int'l Reinsurance Co. v. CPB Enters., Inc.*, 982 F. Supp. 831, 833 (S.D. Ala. 1997); *Mount Vernon Fire Ins. Co. v. Hicks*, 910 F. Supp. 316, 317 (E.D. Mich. 1995); *Scottsdale Ins. Co. v. Child.'s Home Soc'y of N.C., Inc.*, No. 12-81, 2013 WL 3354506, at *3, *8 (E.D.N.C. July 3, 2013), *aff'd*, 581 F. App'x 290 (4th Cir. 2014) (per curiam). If anything, the phrase "sustained by any person" has been interpreted as clarifying the breadth of the Exclusion. *See, e.g.*, *Doe v. Camp Dream Found., Inc.*, No. 16-1323, 2017 WL 3449581, at *9 (N.D. Ga. July 21, 2017) (concluding that substantially similar exclusion applied to claims that volunteer camp counselor was sexually assaulted by a camper, finding that camper fell within plain meaning of "any other person" whose abuse was excluded, and reasoning in part that the exclusion "bars 'all' injury from sexual or physical abuse sustained by 'any person,' without limitation . . . the clause clearly states that the intent is to bar 'all' injury arising from sexual or physical abuse").

Court has instructed, "courts must be careful not to disregard the 'clear import and intent' of a policy's exclusion, and we do not suggest that 'any far-fetched interpretation of a policy exclusion will be sufficient to create an ambiguity requiring coverage.'" *Flomerfelt*, 997 A.2d at 997 (citations omitted). Policy language is ambiguous when it is "subject to more than one *reasonable* interpretation . . . . Courts will not, however, 'distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 141 (3d Cir. 2023) (cleaned up) (emphasis added); *see also Aaron Ambulance Med. Transp., Inc. v. Certain Underwriters at Lloyd's London*, No. 16-4564, 2017 WL 4074283, at *4 (D.N.J. Sept. 14, 2017) ("[A] genuine ambiguity only exists 'where the phrasing of the policy is so confusing that an average policyholder cannot make out the boundaries of coverage.'" (quoting *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1266 (N.J. 2001))).

The interpretation Plaintiffs advocate is unreasonable and far-fetched. For starters, Plaintiffs ignore the language that immediately follows the word "sustained." The Exclusion applies to "[a]ny injury sustained by any person arising out of or resulting from *alleged, threatened or actual* abuse or molestation" by an employee and "all injury sustained by any person, including emotional distress, arising out of molestation or abuse *whether alleged, threatened or actual*," including arising from the insured's negligent hiring and so on. (Policy at 57 (emphasis added).) The Policy language following "sustained" directly contradicts Plaintiffs' assertion that the Exclusion, unlike other Policy provisions, fails to implicate "the mere allegation of abuse or molestation." (Opp. at 4.) The explicit (and repeated) qualifier "alleged, threatened *or* actual" makes clear that a complaint alleging abuse or molestation—or, stated differently, a complaint claiming injury arising from alleged abuse or molestation—falls within the Exclusion. (Policy at 57 (emphasis added)); *see Norman Int'l*, 279 A.3d at 434 ("A list of multiple terms, separated by

commas and the word 'or,' is disjunctive, and only one is necessary to trigger the exclusion. The use of 'or' plainly indicates that any of those listed actions is sufficient to satisfy the definition." (cleaned up)).[12]

Beyond ignoring this language, Plaintiffs seek to nullify it. They insist USLI must defend them until their liability for abuse or molestation is adjudicated—until the "specific statutory elements" of such torts are "proven by a preponderance of the evidence" and C.S. is deemed to have been injured as a result, "[u]pon the conclusion of a trial." (Opp. at 5–6.) What, then, would the Exclusion serve to exclude? At one end of the spectrum, Plaintiffs would have the Court compel USLI to defend them until they are found not liable and the claims against them are dismissed. At the other end, Plaintiffs would enjoy the benefit of USLI's defense until they are found liable, at which point USLI's duty to defend would terminate as to post-judgment proceedings, if any. It goes without saying that the Exclusion does not operate in this manner, or it would not be included at all. What is more, the Exclusion specifies that USLI "shall not have any duty to defend any 'suit' against any insured seeking damages on account of any such injury." (Policy at 57.) Reading out this provision—as well as the "alleged, threatened or actual"

[12] Rephrasing the Exclusion's language to align with Plaintiffs' argument underscores the untenable nature of their position. Plaintiffs in effect maintain that the Exclusion does not apply because it does not say "[a]ny injury [*allegedly or actually*] sustained by any person [*allegedly or actually*] arising out of or resulting from alleged, threatened or actual abuse or molestation." (*See* Policy at 57.) This position defies common sense. The phrase "alleged, threatened or actual" already unambiguously achieves that meaning.

Furthermore, even if the insertion of "allegedly or actually" would make the Exclusion clearer (which it would not), that still "does not render the language ambiguous." *Salih v. Ohio Sec. Ins. Co.*, No. A-1179-17T1, 2018 WL 6272930, at *4 (N.J. Super. Ct. App. Div. Dec. 3, 2018) ("[S]imply because different wording could possibly make a provision clearer does not render the language ambiguous." (citing *Argent v. Brady*, 901 A.2d 419, 425 (N.J. Super. Ct. App. Div. 2006))); *see also Argent*, 901 A.2d at 425 ("That the use of the word 'any' could be perceived by some as making the exclusion clearer, does not make the language that was chosen ambiguous. Language in a policy of insurance is genuinely ambiguous only if the 'phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979))).

qualifier—would surely "write for the insured a better policy of insurance than the one purchased," which the Court cannot do. *Buczek*, 378 F.3d at 288.

Plaintiffs' desired interpretation strains credulity, not least because it goes against the fundamental principle that the duty to defend arises from the allegations in a complaint, irrespective of the ultimate outcome. *See Danek*, 100 A.2d at 203 ("The obligation to defend is to be determined when the action is brought, and not by the out-come of the action."); *Flomerfelt*, 997 A.2d at 998 ("[I]t is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation."). Where a complaint's allegations, if true, bring the underlying claims within a policy's coverage, the insured has a duty to defend, and the duty continues "until all potentially covered claims are resolved." *Flomerfelt*, 997 A.2d at 999. By the same token, where the complaint allegations, "even if successful, would not be within the policy coverage," the insured has no duty to defend—as here. *Danek*, 100 A.2d at 202. C.S. does not allege alternative causes of her injuries, some of which could place her claims within the Policy's coverage. "The complaint alleges just one:" that Plaintiffs' employee "sexually assault[ed], sexually contact[ed] and violat[ed]" her. *Montville I*, 2017 WL 2380175, at *10; (Underlying Compl. ¶ 6); *see Flomerfelt*, 997 A.2d at 999 (explaining that, rather than awaiting adjudication of the underlying complaint and a decision at trial, insurers' coverage obligations may generally be determined via "declaratory judgment proceeding . . . brought in advance of that trial").[13]

[13] To the extent Plaintiffs assert that the massage therapist's conduct on the one hand, and their own negligence or failure to prevent such conduct on the other, are alternative causes of C.S.'s injuries, that argument is unavailing. (Opp. at 7–8); *see Montville I*, 2017 WL 2380175, at *10 ("[I]t does not matter . . . that [the insured's employee] actually committed the abusive acts while [the insured] only created the risk that those acts would occur. That [the underlying plaintiff] seeks to recover . . . based on *more than one theory of liability* is not the same thing as saying that *more than one cause*, one covered and one not, combined to inflict an indivisible injury.").

In short, the Molestation or Abuse Exclusion, by its plain terms, applies to the Underlying Complaint. The Court will not "disregard the 'clear import and intent' of [the] policy's exclusion," "torture straightforward language to find ambiguity where it does not exist," or "strain[] . . . to support the imposition of liability." *Montville II*, 783 F. App'x at 240, 242.

### B. PROFESSIONAL LIABILITY COVERAGE

Plaintiffs do not contend that USLI has a duty to defend or indemnify them pursuant to the professional liability part of their Policy—ironically, the part that afforded Plaintiffs $100,000 in defense expenses in the Underlying Action. Instead, Plaintiffs rest their case on the commercial liability part, specifically the Molestation or Abuse Exclusion discussed above, asserting in their Complaint for declaratory judgment that "[t]he molestation exclusion does not exclude coverage in the C.S. case" and likewise relying solely on the Exclusion at summary judgment. (Compl. ¶ 28; Opp. at 4–6.) Plaintiffs thus do not even attempt to carry their burden of bringing the underlying claims within the scope of their Policy's professional liability coverage. *See S.T. Hudson*, 909 A.2d at 1163; *Worster-Sims v. Tropicana Ent., Inc.*, No. 13-1981, 2014 WL 4978588, at *3 (D.N.J. Oct. 6, 2014). It is USLI alone who identifies a duty to defend under the professional liability part of Plaintiffs' Policy. For the avoidance of any doubt, and out of an abundance of caution in light of USLI's burden as the movant at summary judgment and this Court's role in insurance policy interpretation, the Court briefly considers the relevant professional liability provisions. *See Celotex*, 477 U.S. at 325; *McMillan*, 922 F.2d at 1074. For the reasons that follow, the Court concludes that the professional liability part of Plaintiffs' Policy unambiguously required only the limited, defense-only coverage that USLI has already provided.

USLI defended Plaintiffs pursuant to the "Defense for Allegations of Patient Molestation Coverage Endorsement" ("Endorsement") in the professional liability part of Plaintiffs' Policy.

(Policy at 71; SUMF ¶¶ 28, 36.) This Endorsement provides coverage for "Claims Expenses . . . not exceeding the schedule of Limits of Liability . . . that the Insured shall become legally obligated to pay because of a Claim(s) for Patient Molestation or a Claim(s) which in whole or part involves an allegation(s) of Patient Molestation." (Policy at 71.) The Limit of Liability set by the Policy is $100,000 per claim. (*Id.* at 6, 71.) The Endorsement continues: "When [USLI] has used up the limits . . . by paying Claims Expenses, [USLI] will have no further right or duty to defend any claims or suits under this endorsement, whether pending at that time or started afterwards." (*Id.* at 71.)

Plaintiffs do not disagree that the underlying claims against them are "Claim(s) for Patient Molestation," just as they do not dispute that C.S. alleges "molestation or abuse" as meant by the commercial liability Exclusion—nor could they, given the plain and ordinary meaning of this policy language and its clear application to the Underlying Complaint allegations. The Endorsement defines "Patient Molestation" as "bodily injury, sickness, disease or death, mental anguish, pain and suffering, emotional trauma, or similar emotional injury directly resulting from any improper physical contact of a sexual nature with a patient or client by an Insured."[14] (*Id.* at 72.) This plain language indisputably encompasses the allegations in the Underlying Action that an employee sexually assaulted and contacted C.S., a client, and that she suffered "permanent physical and psychological injuries" as a direct result. (Underlying Compl. at 2, 4.) It is equally undisputed and unambiguous that the Underlying Action constitutes one "claim" of patient molestation for purposes of the $100,000 Limit of Liability. The Endorsement explains that a single "claim" consists of "any incident or a series of incidents of Patient Molestation *by any one*

[14] An "Insured" includes not only "Named Insureds" but also "any past, present or future . . . employee . . . for those Professional Services rendered on behalf of the Named Insured . . . rendered by such person prior to the date of his/her separation." (Policy at 61.)

*person*," and the Underlying Action concerns one massage therapist's alleged molestation. (Policy at 72 (emphasis added); *see* Underlying Compl. at 2.) Finally, "Claim Expenses" are defined in relevant part as "reasonable and necessary legal fees and expenses incurred by [USLI] or by any attorney designated by [USLI] to defend any Insured," i.e., the defense expenses USLI paid the attorney it designated for Plaintiffs in the Underlying Action. (Policy at 62, 72; SUMF ¶¶ 31, 33, 39, 41–44.) Here, USLI disclaimed any further obligation to defend only after it paid the full $100,000 in claim expenses, as was its unambiguous right under the Endorsement. (SUMF ¶¶ 43–44; ECF No. 16-8; *see* Policy at 71 ("When [USLI] has used up the limits shown above by paying Claims Expenses, [USLI] will have no further right or duty to defend any claims or suits under this endorsement, whether pending at that time or started afterwards.").)[15]

Plaintiffs do not argue a different interpretation of this Endorsement, and the Court can conceive of no other. The Underlying Complaint allegations place all claims against Plaintiffs within the Endorsement, and the Endorsement plainly and unambiguously obligated USLI to defend against the Underlying Action up to $100,000 in defense expenses, which it did. USLI therefore has no further duty to defend.

[15] For the sake of completeness, the Court notes that another section of the professional liability part also pertains to claims of "Patient Molestation," but that section is expressly "modifie[d]" and supplanted in relevant part by the Endorsement. (Policy at 71.) This other section would have otherwise precluded all coverage for such claims. The Endorsement's modifications thus work in Plaintiffs' favor, providing defense-only coverage where there would have been none. (*See id.* at 60, 62–64.)

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 16). An appropriate Order accompanies this Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 4, 2026